# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
**No. 24-2022V**

ALIAKSANDR KAVALIOU,

Petitioner,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent.

Chief Special Master Corcoran

Filed: July 16, 2026

*David John Carney, Green & Schafle LLC, Philadelphia, PA, for Petitioner.*

*Austin Joel Egan, U.S. Department of Justice, Washington, DC, for Respondent.*

## FACT RULING ON ONSET[1]

On December 9, 2024, Aliaksandr Kavaliou filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that he suffered a left shoulder injury related to vaccine administration ("SIRVA") as a result of a human papillomavirus ("HPV") vaccine administered to him on December 16, 2021.[3] Pet. at 1, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

Respondent filed his Rule 4(c) Report in October 2025, arguing that Petitioner cannot establish the onset of his left shoulder pain occurred within 48 hours of vaccination

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] Petitioner also alleged a right shoulder injury related to his receipt of a second dose of the HPV vaccination, administered on January 13, 2022, which is addressed in a separate claim, no. 24-20221.

as required for a Table SIRVA claim. Respondent's Report at 4, ECF No. 22. For the reasons set forth below, I find it more likely than not that the onset of Petitioner's left shoulder pain occurred within 48 hours of vaccination, as alleged.

## I. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014). The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may

be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs*., 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## II. Relevant Factual Evidence

I make this finding after a complete review of the record to include all medical records, declarations, and additional evidence filed, and in particular the following:[4]

- Petitioner received the subject HPV vaccine in his left deltoid on December 16, 2021, at a local clinic. Ex. 1 at 6.

- In his declaration, Petitioner attests that following vaccination, he "immediately felt a strange pain and could not understand why it hurt so badly." Ex. 2 ¶ 9. According to Petitioner, he could not move his left arm or hand without pain. *Id.* He noted there was "nothing else besides the vaccine" to account for his pain. *Id.* He thus began to treat his left shoulder with "anesthetic cream . . . but it didn't help[,]" and his pain worsened. *Id.*

- On December 30, 2021 (two weeks post vaccination), Petitioner sent a message to his primary care provider ("PCP") regarding a head injury and headaches. Ex. 3 at 17. Petitioner did not report any shoulder symptoms at this visit.

- Petitioner received the second dose of his HPV vaccination in his right deltoid on January 13, 2022. Ex. 1 at 6. Petitioner attests that he was very worried about receiving this second dose and "asked [his] doctor about [his left] shoulder pain that [he] was still having from [his] first HPV vaccine." Ex. 2 ¶ 10. According to Petitioner, his treater informed him that the pain from the vaccination would not have lasted that long, so his pain likely was not from the subject HPV vaccination; thus, Petitioner felt "foolish" for asking

[4] While I have reviewed all the evidence filed to-date in this case, only evidence related to onset will be discussed herein, though other facts may be provided as necessary.

about it.[5] *Id.* After this second vaccination, Petitioner attests that he "felt the same way in [his] right shoulder as it did in the left . . . [and] got worse and worse over the days and weeks following." *Id.*

- Later that month, on January 26, 2022 (41 days post-vaccination), Petitioner saw his PCP. Ex. 3 at 18. Petitioner explained that he had received an HPV vaccine in both deltoids (in December and January, respectively), and that he had a "dull achy pain on the deltoid area, tenderness to deep palpation, and since the shot on the right shoulder has it there as well." *Id.* Petitioner expressed a concern regarding whether this could be SIRVA, but his PCP thought that was only one possibility, as Petitioner also had rotator cuff impingement and straightening of the cervical spine. *Id.*

- The next day (January 27, 2022), Petitioner had a visit with a department of health physician and reported "continued shoulder pain after HPV vaccine." Ex. 4 at 129. He also complained of "persistent bilateral shoulder soreness which he attribute[d] to side-effects of his HPV vaccinations." *Id.*

- No other medical record or declaration evidence regarding the onset of Petitioner's post vaccination shoulder injury has been filed.

## III. Finding of Fact Regarding Onset

A petitioner alleging a SIRVA claim must show that he experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B)), and that his pain began within that same 48-hour period (42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria)). As noted, Respondent contends that Petitioner's medical records do not support that the onset of his pain occurred within 48 hours of vaccination. Respondent's Report at 4-5.

The totality of the evidence favors Petitioner's onset contentions. The aforementioned medical records, coupled with Petitioner's declaration, establish that Petitioner consistently reported to treaters (for the most part) an onset close-in-time to vaccination; that he sought treatment within just over one month of the December 16, 2021 vaccination; and that he indeed was experiencing symptoms in the relevant timeframe. *See,* e.g., Ex. 3 at 18; Ex. 2 ¶ 9.

The fact that Petitioner delayed treatment a bit (seeking care within less than two months of his vaccination (on January 26, 2022)) actually supports a finding of Table-

[5] There is no mention of this conversation in the filed record.

consistent onset here. In other cases, even *greater* delays have not undermined an otherwise-preponderantly-established onset showing consistent with the Table. *See,* e.g., *Tenneson v. Sec'y of Health & Hum. Servs*., No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), *mot. for rev. denied,* 142 Fed. Cl. 329 (2019) (finding a 48-hour onset of shoulder pain despite a nearly six-month delay in seeking treatment); *Williams v. Sec'y of Health & Hum. Servs*., No. 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment for five-and-a-half months because a petitioner underestimated the severity of her shoulder injury). The delay here is not nearly as long.

Delay in seeking treatment itself also is not *per se* evidence of a non-conforming onset. As I have previously noted, SIRVA petitioners often put off seeking shoulder-related care based on the reasonable assumption that the pain is normal and will resolve on its own over time, especially since patients are often told by medical providers at the time of vaccination to expect some soreness and pain. This appears to have been (at least partially) the case here, with Petitioner explaining that he tried unsuccessfully to treat his pain on his own, with over-the-counter remedies in the month following vaccination. *See,* e.g., Ex. 2 ¶ 9.

The fact that Petitioner contacted his PCP on one occasion between vaccination and his first visit for left shoulder pain does not detract from a favorable onset showing, as that contact was for treatment of an acute head injury and headaches. Ex. 3 at 17. Likewise, the fact that Petitioner received the second allotted dose of the HPV vaccine one month after receipt of the allegedly-injurious vaccination is not evidence of non-conforming onset. Rather, Petitioner received the second dose in the *opposite* arm – thus supporting the conclusion that Petitioner's left shoulder injury had manifested by that time (and not long after the initial vaccination).

In addition, although the filed medical records bearing on onset are *extremely* limited in this case, Petitioner affirmatively and repeatedly linked his shoulder pain to the HPV vaccine – beginning with the January 26th treatment encounter, at which time he noted that he had an HPV vaccine in December (and also January), and "since" then has had pain in the shoulder and "on the right shoulder . . . *as well*[.]" Ex. 3 at 18 (emphasis added). Thus, this record is reasonably read to mean that Petitioner's left (and right) shoulder pain began close-in-time to vaccination. This reporting therefore provides further support for Table onset. One other subsequent medical record also corroborates the contention made in Petitioner's declaration that his left shoulder pain began within 48 hours of vaccination. Ex. 4 at 129 (a January 27, 2022 note that his condition began "after HPV vaccine."). Petitioner has thus established that onset of his injury occurred within the

timeframe required by the Table. To rule otherwise, the record would need to contain reports of contradictory onset.

**Conclusion**

Petitioner has provided preponderant evidence that the onset of his left shoulder pain occurred within 48 hours of vaccination.

I thus encourage the parties to make an attempt at settlement. **Respondent shall file, by no later than Monday, August 31, 2026**, a status report concerning how he intends to proceed, including, if appropriate, whether he would like to file an amended Rule 4(c) Report or whether he is otherwise willing to entertain a reasonable settlement demand from Petitioner.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master